FILED

2026 Mar-05  PM 01:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL MOORE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:23-cv-1654-AMM** |
| ) | |
| **KENNETH FINLEY,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the court on a number of motions, Docs. 61, 62, 69, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 90, 91, 97, 103. Defendants Kenneth Finley, Matthew Garrett, and Steve Moise ("Deputy Defendants") filed a motion for summary judgment, Docs. 62–65. Plaintiff Michael Moore responded to the motion and included a motion for summary judgment. Doc. 82. The motions are fully briefed. Docs. 88, 89, 94. Defendant Sheriff Mark Pettway filed a motion for judgment on the pleadings. Doc. 61. Mr. Moore responded and included a motion for summary judgment. Doc. 80. The motions are fully briefed. Docs. 87, 92. Defendant District Attorney Danny Carr filed a motion for judgment on the pleadings. Doc. 69. Mr. Moore responded and included a motion for summary judgment. Doc. 81. The motions are fully briefed. Docs. 84, 93, 96.

For the reasons explained below, the Deputy Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Mr. Moore's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motions for judgment on the pleadings are **GRANTED**. The remaining motions are **DENIED**.

## I.    BACKGROUND

On February 3, 2022, the Deputy Defendants were dispatched to a house where Candie Moore and Michael Moore were present. Doc. 63-7 at 2; *see generally* Doc. 63-1 (Deputy Finley's body cam footage); Doc. 63-2 (Deputy Garrett's body cam footage); Doc. 63-3 (Deputy Moise's body cam footage). Upon arrival, Ms. Moore informed Deputy Moise that Mr. Moore had hit Ms. Moore. Doc. 63-3 at 10:34:30–43;[1] Doc. 63-7 at 2. Ms. Moore told Deputy Moise that she lived at the residence with Mr. Moore, who is her father. Doc. 63-3 at 10:34:44–46; Doc. 63-7 at 2–3. When asked if she had any bruises, Ms. Moore stated that she had bruises on her face. Doc. 63-3 at 10:34:52–35:02.[2] Deputy Moise asked Ms. Moore if she would

---

[1] The times references on the body-worn-camera footage are located at the top right-hand corner of each video.

[2] Mr. Moore contends that Ms. Moore "stated she had no injuries." Doc. 82 ¶ 2; *see also* Doc. 63-7 at 3 ("Mrs. Moore stated that she did not want any medical attention and has no injuries."). But the Deputy Defendants' body camera footage refutes this, as Ms. Moore told officers that she was bruised and scratched, Doc. 63-3 at 10:34:50–35:15, and Mr. Moore's motion later explains that "Ms. Moore asserts [to the deputies that] she has bruises on her face." Doc. 82 ¶ 3. When "[a party's] version of events is so utterly discredited by the record that no reasonable jury could have

like to see a medic, and she declined, responding that she was okay. Doc. 63-3 at 10:35:05–12; Doc. 63-7 at 3.

Ms. Moore informed Deputy Moise that "this has been happening all the time," and the Moores have "had four or five officers" come to the residence in the past. Doc. 63-3 at 10:34:33–39, 10:36:39–42; *see also* Doc. 63-7 at 2. She explained that she had "called and begged and begged for help." Doc. 63-3 at 10:37:33–35. She also told Deputy Moise that this was "about the fifth or sixth" time she had called for help. *Id.* at 10:37:40–44. Deputy Moise asked Ms. Moore if she had done anything like seek a protective order, and Ms. Moore explained that she had not because of their living situation. *Id.* at 10:35:23–31. Ms. Moore explained that the Moores were involved in "a big property fight." *Id.* at 10:35:31–33. Deputy Moise asked Ms. Moore who owned the house. *Id.* at 10:35:42–44. Ms. Moore explained that "it's in [Mr. Moore's] name right now, but [Ms. Moore is] the one that pays for . . . everything." *Id.* at 10:35:43–47. When asked if she had any relatives or any other place to go, Ms. Moore explained that she did not. *Id.* at 10:36:18–25; Doc. 63-7 at 2–3.

Deputy Moise asked Ms. Moore if she knew what the altercation was over, and Ms. Moore explained that she wanted to let her son borrow a ladder, but Mr.

---

believed him," courts "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Moore would not let her loan the ladder. Doc. 63-3 at 10:36:27–36; Doc. 63-7 at 3. Deputy Moise asked Ms. Moore if she wanted to file a report, and Ms. Moore responded that she "want[ed] his ass put in jail." Doc. 63-3 at 10:37:36–40.

During Deputy Moise's conversation with Ms. Moore on the driveway, Mr. Moore remained on his porch, behind a fenced area. *See* Docs. 63-1 to 63-3 (body cam footage). After speaking with Ms. Moore, Deputy Moise approached the fence and addressed Mr. Moore. Doc. 63-3 at 10:38:19–23. Deputy Moise asked Mr. Moore to step over by the fence gate to speak with Deputy Moise. *Id.* at 10:38:24–27. Mr. Moore pulled out his cell phone, began recording Deputy Moise, and asked Deputy Moise, "Why are you here today?" *Id.* at 10:38:41–48; Doc. 63-7 at 3. Mr. Moore asked Deputy Moise for his name and badge number, and Deputy Moise introduced himself. Doc. 63-3 at 10:38:51–55. Mr. Moore then asked Deputy Moise why Deputy Moise was at the house. *Id.* at 10:38:55–56. Deputy Moise stated that he was at the house "for a domestic call." *Id.* at 10:38:57–58.

Deputy Finely and Deputy Moise asked Mr. Moore if he had any identification on him. *Id.* at 10:39:00–02; Doc. 63-1 at 10:38:52–54. Mr. Moore replied that "Alabama is not an ID state." Doc. 63-3 at 10:39:03–05; Doc. 63-1 at 10:38:55–58. Mr. Moore stated, "Quit playing games. Keep it legal." Doc. 63-3 at 10:39:06–08; Doc. 63-1 at 10:38:58–39:01. Deputy Moise and Deputy Finley asked Mr. Moore for his name. Doc. 63-3 at 10:39:08–11; Doc. 63-1 at 10:39:01. Mr. Moore moved

4

his cell phone closer to Deputy Finley and repeatedly asked, "Why are you here?" as Deputy Finley continued to ask him for his name. Doc. 63-3 at 10:39:11–21; Doc. 63-1 at 10:39:03–14. Deputy Finley asked Mr. Moore if Mr. Moore was failing to identify himself, and Mr. Moore insisted that such behavior is "not a crime in Alabama." Doc. 63-3 at 10:39:21–24; Doc. 63-1 at 10:39:14–17; Doc. 63-7 at 3.

Deputy Finley opened the gate and asked Mr. Moore to come on the side of the fence where the Deputy Defendants were standing. Doc. 63-3 at 10:39:26–28; Doc. 63-1 at 10:39:19–21. Deputy Finley and Deputy Moise walked through the open gate, and approached Mr. Moore, as Mr. Moore asked, "Am I being detained?" Doc. 63-3 at 10:39:29–31; Doc. 63-1 at 10:39:21–23. Deputy Finley and Deputy Moise nudged Mr. Moore to the outside of the fence, and Mr. Moore complied. Doc. 63-3 at 10:39:30–33; Doc. 63-1 at 10:39:23–26. They again asked Mr. Moore if he had identification on him. Doc. 63-3 at 10:39:33–38; Doc. 63-1 at 10:39:25–27. Mr. Moore did not respond and continued to video the Deputy Defendants. Doc. 63-3 at 10:39:35–41; Doc. 63-1 at 10:39:26–34; Doc. 63-7 at 3. Deputy Finley checked Mr. Moore's body for weapons. Doc. 63-3 at 10:39:42–53; Doc. 63-1 at 10:39:34–45. Deputy Finley again asked for Mr. Moore's name, and Mr. Moore responded by putting his cell phone close to Deputy Finley and asking for Deputy Finley's name and badge number. Doc. 63-3 at 10:39:53–57; Doc. 63-1 at 10:39:46–50; Doc. 63-7 at 3. Deputy Finley grabbed Mr. Moore's cell phone from Mr. Moore's hand and

placed it on the vehicle behind Mr. Moore, and Deputy Moise and Deputy Finley handcuffed Mr. Moore. Doc. 63-3 at 10:39:57–40:23; Doc. 63-1 at 10:39:49–40:10.

Mr. Moore instructed the Deputy Defendants not to turn his cell phone off, asserting that such conduct is "a felony." Doc. 63-3 at 10:40:20–22; Doc. 63-1 at 10:40:12–15. Mr. Moore told the Deputy Defendants, "Don't erase my files," and Deputy Finley informed Mr. Moore that he was turning Mr. Moore's phone off so Mr. Moore could save his battery. Doc. 63-3 at 10:40:28–32; Doc. 63-1 at 10:40:21–25. Deputy Finley and Deputy Moise repeatedly asked Mr. Moore for his name. Doc. 63-3 at 10:40:33–40; Doc. 63-1 at 10:40:26–33. Mr. Moore stated, "I'm not answering any questions." Doc. 63-3 at 10:40:41–43; Doc. 63-1 at 10:40:34–35. Deputy Finley asked Mr. Moore if he'd like to give his side of the story. Doc. 63-3 at 10:40:44–47; Doc. 63-1 at 10:40:37–39. When Mr. Moore responded by asking Deputy Finley if his "recorder" was running, Deputy Finley and Deputy Moise led Mr. Moore to Deputy Garrett's vehicle. Doc. 63-3 at 10:40:46–41:11; Doc. 63-1 at 10:40:39–41:03; Doc. 63-8 at 3.

Mr. Moore asked, "Am I under arrest?" to which Deputy Finley replied, "Yes sir. For domestic violence." Doc. 63-3 at 10:41:11–15; Doc. 63-1 at 10:41:04–08;[3]

---

[3] Mr. Moore contends that Deputy Finley "did not state any charges or statutes." Doc. 82 ¶ 10. The body camera footage shows that Deputy Finley told Mr. Moore he was under arrest for domestic violence. Doc. 63-3 at 10:41:11–15; Doc. 63-1 at 10:41:04–08.

*see also* Doc. 63-6 at 2. Deputy Moise then acquired Mr. Moore's name, social security number, and date of birth from Ms. Moore. Doc. 63-3 at 10:41:58–42:35. Deputy Finley documented red bruising on Ms. Moore's cheek and a red scratch on Ms. Moore's neck, and Ms. Moore informed the Deputy Defendants that Mr. Moore had knocked out her fake teeth with his fist. *Id.* at 10:43:17–37; Doc. 63-1 at 10:43:04–29. Deputy Garrett transported Mr. Moore to the Jefferson County Jail, Docs. 63-4 to 63-5, where Mr. Moore remained for a day, Doc. 82 ¶ 13.

On September 25, 2023, Mr. Moore requested information under Alabama Code Section 41-13-1 from District Attorney Carr and Sheriff Pettway. Doc. 1 ¶ 27. Mr. Moore specifically sought "information as to the complete . . . names of Officers Garrett, Gast, Finley, and Moise." *Id.* He followed up on this request on October 12, 2023. *Id.* But neither District Attorney Carr nor Sheriff Pettway provided Mr. Moore the requested information. *Id.*

On December 7, 2023, Mr. Moore filed a complaint against Deputies Finley, Garrett, Gast, and Moise, as well as District Attorney Carr and Sheriff Pettway, asserting twenty-nine claims. Doc. 1. On August 29, 2024, the court ruled on motions to dismiss, dismissing all but twelve of Mr. Moore's claims. Doc. 32. Mr. Moore's remaining claims are: (1) (Count One) a claim of unlawful entry against Deputies Finley and Moise; (2) (Count Three) a claim of false arrest against Deputies Finley and Moise; (3) (Count Five) a claim of false arrest against Deputies Finley

7

and Moise; (4) (Count Seven) a claim of false arrest against Deputies Finley and Moise; (5) (Count Nine) a claim of false arrest against Deputies Finley and Moise; (6) (Count Eleven) a claim of false arrest against Deputies Finley and Moise (7) (Count Thirteen) a claim of false arrest against Deputies Finley and Moise; (8) (Count Fifteen) a claim of false arrest against Deputy Garrett; (9) (Counts Seventeen through Twenty) claims of malicious prosecution against Deputy Moise; (10) (Count Twenty-Four) a claim of false imprisonment against Deputy Finley; (11) (Count Twenty-Eight) a claim of failure to comply with document demand, both as a constitutional right and under the Alabama Open Records Act, against District Attorney Carr; and (12) (Count Twenty-Nine) a claim of failure to comply with document demand under the Alabama Open Records Act against Sheriff Pettway. *Id.* at 43–44.

## II.    LEGAL STANDARD

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (cleaned up). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Id.* at 152 (cleaned up). Under this standard, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its

purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party has carried its burden, Rule 56 requires that the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also* Fed. R. Civ. P.

56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

## III.    DISCUSSION

### A. Deputy Defendant Claims

#### 1.  Count One: Unlawful Entry

Mr. Moore asserts a claim of unlawful entry against Deputies Finley and

Moise. Doc. 1 at 6. He alleges that the two deputies "unlawfully entered" his "yard[]" without permission . . . through a closed gate" that was "clearly marked with a no trespassing notice, without a warrant, probable cause or reasonable suspicion of a crime, or any lawful reason." *Id.*

A section 1983 claim of unlawful entry arises under the Fourth Amendment. "The very core of the Fourth Amendment is the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021) (cleaned up). And "[t]he chief evil the Fourth Amendment protects against is a government agent's warrantless entry into a person's home." *Id.* (cleaned up). Additionally, the Supreme Court has held that "curtilage—the area immediately surrounding and associated with the home" is "part of the home itself for Fourth Amendment purposes." *Collins v. Virginia*, 584 U.S. 586, 592 (2018) (cleaned up). "When an officer enters a person's home without a warrant and without consent, any resulting search or seizure violates the Fourth Amendment unless it was supported by probable cause and exigent circumstances." *Hardigree*, 992 F.3d at 1224.

The two deputies move for summary judgment on this claim on the basis that they are entitled to qualified immunity. Doc. 65 at 9. "The qualified immunity defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (cleaned up).

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Id.* First, the plaintiff "must establish that the defendant violated a constitutional right." *Id.* (cleaned up). Second, the plaintiff "must show the violated right was clearly established." *Id.* (cleaned up). Federal district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (cleaned up). "If the official did not violate the law, the inquiry ends." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007).

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Corbitt*, 929 F.3d at 1311. The Eleventh Circuit has "identified three different ways a plaintiff can show that the state of the law gives officials fair warning of a clearly established right." *Id.* at 1312. *First*, the plaintiff can "show that a materially similar case has already been decided." *Id.* (cleaned up). In the Eleventh Circuit, a right may be clearly established by "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Id.* (cleaned up).

*Second*, the plaintiff can show that a right is clearly established if he can

"show that a broader, clearly established principle should control the novel facts of a particular situation." *Id.* (cleaned up). In this scenario, "the principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (cleaned up).

*Third*, a plaintiff may show that a right is clearly established if the "case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Id.* (cleaned up).

"[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). So the court "must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.*

The court explained in its order on the motions to dismiss that "[t]he parties did not assist the court in this regard," and stated that "[o]n summary judgment, the parties are directed to separate out the qualified immunity arguments and evidence for each defendant." Doc. 32 at 14. The Deputy Defendants noted the court's instruction in a footnote and stated "the video evidence confirms that both Deputy Moise and Deputy Finley both had probable cause to enter the fence." Doc. 65 at 13 n.4.

The video evidence shows that Deputies Moise and Finley are similarly situated as to the application of qualified immunity: both deputies responded to the domestic dispute, both deputies listened to Ms. Moore's explanation of the situation, both deputies repeatedly asked Mr. Moore for his name, both deputies entered Mr. Moore's fenced-in yard, both deputies ushered Mr. Moore out of that yard, and both deputies conducted the arrest of Mr. Moore. *See generally* Docs. 63-1 to 63-3 (the deputies' body cam footage).

*First*, the deputies contend that they were engaged in a discretionary function at the time of the alleged violation because they were exercising their authority to investigate a domestic dispute and effectuate an arrest under Alabama Code Section 15-10-1. Doc. 65 at 10. An official performs a discretionary function when he performs an act "of a type that fell within the employee's job responsibilities." *Holloman ex. rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004). Because effectuating an arrest fell within the deputies' job responsibilities, the court agrees that the deputies were performing a discretionary function. Therefore, Mr. Moore "must show that: (1) [the deputies] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* at 1264.

The deputies argue that they are entitled to qualified immunity because "there was probable cause to arrest [Mr. Moore], the gate was unlocked, and exigent

circumstances existed for Deputy Finley to enter the unlocked fence." Doc. 65 at 14. According to the deputies, this means that they "could not and did not violate any clearly established law." *Id.* The deputies contend that when the deputies entered Mr. Moore's backyard, they "had already learned that Ms. Moore was living at [Mr. Moore's] residence and that [Mr. Moore] had hit Ms. Moore multiple times, resulting in physical injuries to Ms. Moore." *Id.* at 13. This knowledge, according to the deputies, gave them "probable cause to question and arrest [Mr. Moore]." *Id.*

Regardless of the deputies' estimations about probable cause, their actions violated the Fourth Amendment because they did not have consent to enter, they did not have a warrant, and there were no exigent circumstances. For a warrantless seizure that lacks consent to pass muster under the Fourth Amendment, "probable cause and exigent circumstances" must be present. *Hardigree*, 992 F.3d at 1224. "[T]he existence of probable cause does not by itself validate a warrantless home arrest." *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1328 (11th Cir. 2006), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

None of the facts before the court indicate the existence of exigent circumstances. The deputies cite examples of exigent circumstances, including providing emergency aid, engaging in hot pursuit of a fleeing suspect, and preventing the imminent destruction of evidence. Doc. 65 at 12–13 (citing *Missouri v. McNeely*, 569 U.S. 141, 148–49 (2013)). The deputies emphasize the example of

"law enforcement's need to provide emergency assistance to an occupant of a home," *id.* at 12 (citing *McNeely*, 569 U.S. at 149). According to the deputies, "exigent circumstances existed to provide assistance to Ms. Moore." Doc. 89 at 9.

The cases cited by the deputies in support of their emergency-aid argument are inapposite here. In one of the cases cited by the deputies, the officers arrived at a house and observed a smashed pickup truck with blood on it, damaged fenceposts, broken house windows with broken glass on the ground, blood on clothes inside the truck and on the door to the house, and a man inside the house screaming and throwing things. *Michigan v. Fisher*, 558 U.S. 45, 45–46 (2009). In ruling that the officer's entry was reasonable under the Fourth Amendment, *id.* at 48, the *Fisher* Court relied upon another case with similar facts—*Brigham City v. Stuart*, 547 U.S. 398 (2006).

In *Brigham City*, the officers arrived at a house and observed "juveniles drinking beer in the backyard" and "that a fracas was taking place inside the kitchen." *Brigham City*, 547 U.S. at 406. They watched through the window as a juvenile broke free from the adults restraining him and punched another adult in the face, who recoiled to the sink, spitting blood. *Id.* The Court concluded that "the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." *Id.*

The *Fisher* Court explained that the officer's entry was reasonable for several

reasons. *First*, "[j]ust as in *Brigham City*, the police officers [in *Fisher*] were responding to a report of a disturbance." *Fisher*, 558 U.S. at 48. *Second*, "[j]ust as in *Brigham City*, when they arrived on the scene they encountered a tumultuous situation in the house—and . . . they also found signs of a recent injury." *Id. Third*, "just as in *Brigham City*, the officers could see violent behavior inside." *Id.* The Court explained that "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Id.* at 49 (cleaned up). Indeed, a mere bloody lip can suffice. *Id.* But the situation an officer confronts must bear some "indicia of an urgent, ongoing emergency." *United States v. Timmann*, 741 F.3d 1170, 1179 (11th Cir. 2013).

The deputies lacked such indicia here. When the Deputy Defendants arrived on the scene, there was no ongoing tumultuous or violent behavior. *See generally See* Docs. 63-1 to 63-3 (the deputies' body cam footage). The Deputy Defendants were responding to a report of a disturbance, but they did not encounter a tumultuous situation upon their arrival. During his interaction with the Deputy Defendants, Mr. Moore was not displaying any violent behavior. *See id.* Rather, he was sitting calmly with his dogs, on the porch far away from Ms. Moore and the Deputy Defendants. *See id.* Mr. Moore moved closer to the Deputy Defendants and Ms. Moore only after he was instructed to exit his fenced yard. Doc. 63-3 at 10:39:26–36; Doc. 63-1 at 10:39:19–28. Even as he moved closer to the Deputy Defendants, he remained

nonviolent and simply stood with his phone recording them. *See* Doc. 63-3 at 10:38:38–54; Doc. 63-7 at 3. Though Ms. Moore reported some bruising and a scratch, she denied any need for medical treatment. Doc. 63-3 at 10:35:05–12; Doc. 63-7 at 3. Any medical treatment the Deputy Defendants could have given to Ms. Moore would have occurred on the outside of the fence, away from the fenced area or porch where Mr. Moore was sitting. *See* Docs. 63-1 to 63-3 (showing that during the entire encounter with the deputies, Ms. Moore remained on the outside of the fence).

While there may have been violence, tumult, or even an emergency when the altercation between the Moores occurred, those exigencies had dissipated before the officers arrived. *See Brigham City*, 547 U.S. at 405 (emphasizing that "the officers were confronted with *ongoing* violence"). Accordingly, the Deputy Defendants have not shown that the emergency aid exception to the warrant requirement applies here. The court emphasizes that this result is intensely fact bound and driven by the lack of any ongoing medical emergency or continuing crisis needing immediate aid. If the circumstances presented such an ongoing emergency, the deputies' situation would be different.

The deputies further suggest that they were conducting a "knock and talk." *See* Doc. 65 at 13–14. The deputies contend that an "officers' warrantless entry by opening a closed gate does not violate the Fourth Amendment." *Id.* at 13. But the

cases that the deputies cite for this proposition relate to instances where the officers entered the curtilage of a home merely to speak with the residents. *See United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) ("[O]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just an any private citizen may." (cleaned up)). The deputies cite no precedent allowing officers to enter the curtilage of a person's home relying solely on probable cause—without a warrant, consent, or exigent circumstances—to arrest someone.

Because the record shows a violation of the Fourth Amendment, Mr. Moore "must show the violated right was clearly established." *Corbitt*, 929 F.3d at 1311 (cleaned up). It was. The Eleventh Circuit has held that "a warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant." *Bashir*, 445 F.3d at 1328. And multiple precedents support the notion that Mr. Moore was within the curtilage of his home when he was standing inside a fenced yard. *Fixel v. Wainwright*, 492 F.2d 480, 484 (5th Cir. 1974)[4] (holding that shared back yard "surrounded by a chain link fence" was entitled to Fourth Amendment protection); *United States v. Dunn*, 480

---

[4] All decisions of the Fifth Circuit before October 1, 1981 are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

U.S. 294, 302 (1987) (cleaned up) ("[F]or most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage—as the area around the home to which the activity of home life extends—is a familiar one easily understood from our daily experience.").

Decades of precedent clearly establishes that a warrantless entry into the curtilage of a home without probable cause and exigent circumstances violates the Fourth Amendment. The court is "mindful of the admonition against reliance on broad legal generalities when considering whether certain conduct crosses the line from the lawful to the unlawful." *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1564 (11th Cir. 1993), *opinion modified on reh'g*, 15 F.3d 1022 (11th Cir. 1994). The Eleventh Circuit has, "however, rejected the argument that a claimant has no clearly established right where no precedent held that the official's specific action . . . in materially similar circumstances had created § 1983 liability." *Id.* "An approach recognizing the constitutional right yet finding no violation unless some prior court has expressly so held on materially similar facts would add an unwarranted degree of rigidity to the law of qualified immunity." *Id.* at 1564–65 (cleaned up).

At the time Deputy Moise and Deputy Finley entered Mr. Moore's fenced-in yard to arrest him, a reasonable official in the deputies' position would have known that their conduct could violate Mr. Moore's Fourth Amendment right to be free from unlawful entry into the curtilage of his home. Accordingly, the Deputy

Defendants' motion for summary judgment as to Count One is **DENIED**. Mr. Moore's motion for summary judgment as to Count One is **GRANTED**.

### 2. Unlawful Detention Claims

#### a. Counts Three, Five, Seven, Nine, Eleven, and Thirteen: False Arrest

In Counts Three, Five, Seven, Nine, Eleven, and Thirteen, Mr. Moore asserts claims of unlawful detention against Deputies Finley and Moise for coming into his yard and detaining him. Doc. 1 at 7–12. Mr. Moore alleges that Deputies "Finley and Moise entered [his] . . . yard, through a closed gate, clearly marked with a no trespassing notice, and detained [him]." *Id.* at 7. Mr. Moore further alleges that the officers entered the yard and arrested him because he "was exercising his Constitutional right to video officers in the performance of their duties[,] [w]hich is not a crime in Alabama." *Id.* He similarly alleges that the deputies detained him unlawfully because he did nothing wrong in failing to produce identification and refusing interrogation. *Id.* at 8–12. The court explained in its order on the motions to dismiss that it will construe these counts as false arrest claims against Deputies Finley and Moise. Doc. 32 at 19–20, 24.

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). "[A]n officer is entitled to qualified immunity if he had even arguable probable cause." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023) (cleaned

up). "[A]n officer has *arguable* probable cause if a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* at 1236 (cleaned up). Further, "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry." *Id.* (cleaned up).

The deputies argue that they are entitled to qualified immunity because they had arguable probable cause to arrest Mr. Moore. Doc. 65 at 14.[5] According to the deputies, they had arguable probable cause to arrest Mr. Moore for Domestic Violence in the Third Degree, Alabama Code § 13A-6-132. *See id.* at 14–18. "Ms. Moore informed [the deputies] that [Mr. Moore] had hit Ms. Moore multiple times on the head, causing multiple bruises and scratches on her face, and [Mr. Moore] did not refute that story." *Id.* at 15.

"Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are

---

[5] Just as with the unlawful entry claim, Deputies Moise and Finley do not separate their qualified immunity arguments into arguments about each individual. However, the video evidence shows that Deputies Moise and Finley are similarly situated as to the application of qualified immunity: both deputies responded to the domestic dispute, both deputies listened to Ms. Moore's explanation of the situation, both deputies repeatedly asked Mr. Moore for his name, both deputies entered Mr. Moore's fenced-in yard, both deputies ushered Mr. Moore out of that yard, and both deputies conducted the arrest of Mr. Moore. *See* Docs. 63-1 to 63-3. Any differences in the deputies' behavior—such as Deputy Finley opening the gate—are not determinative of the qualified immunity analysis as to the claim of false arrest.

sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). However, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) (cleaned up). To determine whether an officer had arguable probable cause to arrest, the court considers "the elements of the alleged crime and the operative fact pattern." *Id.* The deputies are "shielded by qualified immunity so long as [they] had probable cause to arrest [Mr. Moore] for *any* offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 n.6 (11th Cir. 2003). The Eleventh Circuit has held that "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Id.* (cleaned up).

The deputies arrested Mr. Moore under Alabama Code § 13A-6-132 for Domestic Violence in the Third Degree. Doc. 63-8 at 2. Alabama Code § 13A-6-132 provides:

> (a)(1) A person commits domestic violence in the third degree if the person commits the crime of assault in the third degree pursuant to Section 13A-6-22; [or] . . . the crime of harassment pursuant to subsection (a) of Section 13A-11-8; . . . and the victim is a . . . child . . . [or] a present household member . . . .

The criminal complaint against Mr. Moore shows that Mr. Moore was charged with Domestic Violence—Third Degree for harassment against his child and co-resident, Ms. Moore. Doc. 63-9. "A person commits the crime of harassment if, with

intent to harass, annoy, or alarm another person, he . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact." Ala. Code § 13A-11-8(a)(1). Also, Alabama law permits warrantless arrests for domestic violence offenses. *See id.* § 15-10-3(a)(8).

When the deputies arrested Mr. Moore, they knew several facts: (1) there had been a domestic dispute, Doc. 63-7 at 2; Doc. 63-8 at 3; (2) Mr. Moore had struck Ms. Moore on the face, leaving visible bruising and scratching, Doc. 63-3 at 10:34:53–35:03; and (3) this was around the fifth or sixth time such a domestic dispute had occurred and Ms. Moore involved law enforcement, *id.* at 10:37:40–44. Based on the knowledge available to the deputies at the time they arrested Mr. Moore, they had probable cause to believe that Mr. Moore had struck Ms. Moore, a co-resident, thus violating Alabama Code § 13A-6-132(a)(1). Therefore, Mr. Moore has not shown that the deputies lacked arguable probable cause or violated a clearly established right. Accordingly, the court **GRANTS** the Deputy Defendants' motion for summary judgment as to Counts Three, Five, Seven, Nine, Eleven, and Thirteen. The court **DENIES** Mr. Moore's motion for summary judgment as to Counts Three, Five, Seven, Nine, Eleven, and Thirteen.

### b. Count Fifteen: False Arrest

In Count Fifteen, Mr. Moore asserts a claim of false arrest against Deputy Garrett. Doc. 1 at 13. Deputy Garrett argues that he is entitled to qualified immunity

on the same grounds as Deputy Finley and Deputy Moise because probable cause existed to arrest Mr. Moore. Doc. 65 at 18. The court agrees. Accordingly, the court **GRANTS** the Deputy Defendants' motion for summary judgment as to Count Fifteen. The court **DENIES** Mr. Moore's motion for summary judgment as to Count Fifteen.

### c. Counts Seventeen through Twenty: Malicious Prosecution

In Count Seventeen, Mr. Moore asserts a claim of soliciting a criminal complaint against Deputy Moise. Doc. 1 at 14. Mr. Moore specifically alleges that Deputy Moise "solicited a criminal complaint[] after the arrest to create false charges." *Id.* In Count Eighteen, Mr. Moore asserts a claim of omission of material facts before a magistrate against Deputy Moise. *Id.* Mr. Moore alleges that Deputy Moise "concealed and suppressed material facts" to obtain a warrant from the magistrate. *Id.* In Count Nineteen, he asserts a claim of securing a warrant to cover up unlawful arrest against Deputy Moise. *Id.* at 15. And in Count Twenty, Mr. Moore asserts a claim against Deputy Moise for testimony before a magistrate without personal knowledge. *Id.* at 16. The court explained in its order on the motions to dismiss that it "understands these as claims of malicious prosecution." Doc. 32 at 25.

"The Supreme Court has recognized a Fourth Amendment claim for malicious prosecution, which, it has explained, is sometimes referred to as a claim for

unreasonable seizure pursuant to legal process." *Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023) (cleaned up). And "[b]ecause the claim is a mashup of sorts, the plaintiff must prove both (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Id.* (cleaned up).

The Eleventh Circuit has established a seven-element test that a plaintiff must satisfy to establish a malicious prosecution claim: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused;" (5) "the legal process justifying [his] seizure was constitutionally infirm;" (6) "[his] seizure would not otherwise be justified without legal process;" and (7) when qualified immunity is asserted as a defense, "that the law was clearly established." *Id.* at 1111–12 (cleaned up).

Deputy Moise argues that Mr. Moore "cannot satisfy all seven required elements to hold Deputy Moise liable for malicious prosecution" because "probable cause existed for [Mr. Moore's] arrest and charge for Domestic Violence—Third Degree, and, thus, no underlying constitutional violation occurred." Doc. 65 at 21. Deputy Moise misunderstands the role that probable cause plays in the Eleventh Circuit's seven elements. *See Williams v. Aguirre*, 965 F.3d 1147, 1157–58 (11th Cir. 2020) ("Although the officers' arguments [about probable cause to arrest

Williams] would have force in the context of a false-arrest claim, Williams's claim of malicious prosecution involves a different kind of seizure.").

"A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Id.* at 1158. "These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process." *Id.* "Malicious prosecution, in contrast, requires a seizure pursuant to legal process." *Id.* (cleaned up). "Of course, warrant-based seizures fall within this category." *Id.* "So do seizures following an arraignment, indictment, or probable-cause hearing." *Id.* But "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated on other grounds by Williams*, 965 F.3d at 1159–62. "Thus, the plaintiff's [warrantless] arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *Id.* (cleaned up). Accordingly, Deputy Moise's probable cause to arrest Mr. Moore at the time of the warrantless arrest is not the proper focus.

"The analysis of whether seizures pursuant to legal process violate the Fourth Amendment is distinct from the analysis of seizures without legal process." *Williams*, 965 F.3d at 1162. "Although the lawfulness of a warrantless arrest turns on whether the arresting officer had probable cause, the lawfulness of seizures

pursuant to legal process turns on the validity of the legal process itself." *Id.* (cleaned up). "In other words, warrantless arrests concern whether the facts known to the arresting officer establish probable cause, while seizures pursuant to legal process concern whether the judicial officer who approved the seizure had sufficient information to find probable cause." *Id.* at 1162–63. The Eleventh Circuit declined to hold "that the standards for malicious prosecution and false arrest are coextensive." *Id.* at 1164. Rather, the Eleventh Circuit "clarif[ied] a plaintiff's burden to prove a violation of [his] Fourth Amendment right to be free of unreasonable seizures." *Id.* at 1165 (cleaned up). "To meet this burden, a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.*

The record does not show that Mr. Moore suffered an unconstitutional seizure pursuant to legal process. Mr. Moore alleged in his complaint that when Deputy Moise appeared before the magistrate to request a warrant, "[Deputy] Moise testified about events and facts he had no personal knowledge of. [Deputy] Moise . . . also omitted and/or concealed, material facts of the events [he] testified as to and about, that [Mr. Moore] was protecting, securing, and retrieving his personal property that was being stolen." Doc. 1 ¶ 24. Mr. Moore also alleged that "Candie Moore did not appear before any magistrate or request a warrant." *Id.*

28

Deputy Moise responds that he "arrested [Mr. Moore] without a warrant pursuant to Code of Alabama section 15-10-3(a)(8) and Alabama Rule of Criminal Procedure 4.1(a)(1)(iii), and he signed a criminal complaint before a judge or magistrate." Doc. 65 at 21 n.6. Deputy Moise includes a copy of the signed criminal complaint, Doc. 63-9 at 2, as does Mr. Moore, Doc. 82 at 46.

The criminal complaint shows that Deputy Moise appeared before the magistrate and stated that he had probable cause to believe that Mr. Moore committed the crime of harassment against Ms. Moore by striking Ms. Moore and leaving red bruises on her right cheek. Doc. 82 at 46; Doc. 63-9 at 2. The criminal complaint also lists Ms. Moore as a witness for the state. Doc. 63-9 at 2; Doc. 82 at 46.

"To prevail on his Fourth Amendment claim, [Mr. Moore] must establish that the legal process justifying his seizure—the arrest warrant that listed [a charge for the crime of harassment]—was constitutionally infirm and that his seizure would not otherwise be justified without legal process." *Williams*, 965 F.3d at 1165. Mr. Moore "can prove that his arrest warrant was constitutionally infirm if he establishes either that the officer who applied for the warrant should have known that his application failed to establish probable cause or that an official . . . intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* (cleaned up).

29

According to Mr. Moore, "[t]he difference between the Field Incident Report and Arrest information sheet and the Statements made by Defendant Moise in the complaint, affidavit, to secure an arrest warrant are dramatically different." Doc. 82 at 32. Mr. Moore contends that Deputy Moise "omitted, that this occurred at [Mr. Moore's] home, where Candie Moore was a guest and that Candie Moore stated that she attempted to remove, steal, a ladder from [Mr. Moore's] home, property and that there was an argument." *Id.* at 33. According to Mr. Moore, this was a "willful omission of substantial exculpatory evidence." *Id.* at 34 (emphasis omitted). Mr. Moore believes that when Ms. Moore informed Deputy Moise of the altercation over the ladder, Ms. Moore's "statements were and are in fact a confession, to every element of [several crimes]." *Id.* at 34–35. Mr. Moore asserts that "[t]he totality of the facts and law is clear, to all except the total[ly] incompetent, [Mr. Moore] had not committed any crime, but was the victim." *Id.* at 35.

Deputy Moise responds that no matter the previous altercation, "it does not justify [Mr. Moore's] actions." Doc. 89 at 5. Deputy Moise contends that Mr. Moore "attempts to justify [Mr. Moore's] domestic violence by alleging that [Mr. Moore] had the right to hit Ms. Moore, on numerous occasions that day, causing bruises and scratches on her face, by citing to certain statutory codes that [Mr. Moore] was defending his property." *Id.*

The Eleventh Circuit has "employed a two-part test to determine whether a

30

misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment." *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019). First, the court "ask[s] whether there was an intentional or reckless misstatement or omission." *Id.* "Then, [the court] examine[s] the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Id.*

Nobody disputes that the criminal complaint does not mention any altercation over a ladder, *see* Doc. 63-9 at 2; Doc. 82 at 11, 46, but that is not the end of the inquiry. "[Mr. Moore] first bears the burden of creating a genuine dispute about whether [Deputy Moise's] accusation against him was intentionally false and not, for example, a mistaken belief on the part of [Deputy Moise]." *Williams*, 965 F.3d at 1165. Conclusory allegations and speculation are not enough. *Id.* at 1165–66. "Instead, [Mr. Moore] must identify affirmative evidence from which a jury could find that" Deputy Moise knew of exculpatory information but intentionally or recklessly omitted it from the complaint. *See id.* at 1166; *Paez*, 915 F.3d at 1287.

Mr. Moore has not carried this burden for two reasons. *First*, Mr. Moore has not shown that Deputy Moise knew of any exculpatory information that he omitted from the complaint. Ms. Moore informed Deputy Moise that she lived in the house with her father and that "everything here is in [her] name besides the house." Doc. 63-3 at 10:36:23–25. Ms. Moore then informed Deputy Moise that she wanted to let

her "son borrow [her] own ladder" and that Mr. Moore refused to let her do so, *id.* at 10:36:30–36, leading to Mr. Moore striking her with a closed fist, knocking her fake teeth out and leaving a red bruise on her right cheek, *id.* at 10:43:17–37; Doc. 63-1 at 10:43:04–29. When Deputy Finley asked Mr. Moore if Mr. Moore wanted to give his side of the story, Mr. Moore refused to answer. Doc. 63-3 at 10:40:44–47; Doc. 63-1 at 10:40:37–39. Accordingly, the record shows that Deputy Moise's only knowledge of the altercation at the time he signed the complaint was that: (1) everything except the house—including presumably the ladder—was in Ms. Moore's name; (2) Ms. Moore attempted to let her son borrow "[her] own ladder"; (3) Mr. Moore refused to let Ms. Moore lend her own ladder, and the disagreement led to Mr. Moore hitting Ms. Moore with a closed fist hard enough to knock her fake teeth out; and (4) Ms. Moore had previously called deputies to the home several times because of Mr. Moore's aggressive behavior. Mr. Moore has not established that Deputy Moise had any reason to suspect that Ms. Moore was "robbing" Mr. Moore. Nor does the record show that Deputy Moise had any reason to believe that Mr. Moore's actions were taken in defense of Mr. Moore's property rather than taken as part of a pattern of violent behavior against his daughter.

*Second*, even if the court were to conclude that Deputy Moise had some reason to believe that Ms. Moore was committing a crime necessitating self-defense, Mr. Moore has proffered no evidence that Deputy Moise intentionally omitted the

altercation from his complaint. The Eleventh Circuit has made clear that "[i]ntentional or reckless material misstatements or omissions in a warrant affidavit . . . could violate the Fourth Amendment." *Paez*, 915 F.3d at 1287. "Negligent misstatements or omissions, on the other hand, do not." *Id.*

The Eleventh Circuit has found such intentional or reckless omission where "the record supports an inference that *someone* is lying." *Williams*, 965 F.3d at 1166. But that is not the record before the court here. The record shows that Deputy Moise had no reason to doubt Ms. Moore's statement that she was punched for attempting to loan her own ladder, part of an alleged pattern of domestic violence. Mr. Moore has not shown that Deputy Moise's omission of the ladder altercation in the complaint was intentional or reckless. Accordingly, the court **GRANTS** Deputy Moise's motion for summary judgment as to Counts Seventeen through Twenty. The court **DENIES** Mr. Moore's motion for summary judgment as to Counts Seventeen through Twenty.

### d. Count Twenty-Four: False Imprisonment

In Count Twenty-Four, Mr. Moore asserts a claim of unlawful imprisonment against Deputy Finley. Doc. 1 at 18. He alleges that Deputy Finley "did arrest and cause the unlawful imprisonment of [Mr. Moore]" in violation of Mr. Moore's Fourth and Fourteenth Amendment rights. *Id.*

"A § 1983 claim of false imprisonment requires a showing of common law

33

false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Id.* And "[t]he Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* (cleaned up). "To establish a due process violation, [the plaintiff] must prove that [the defendant] acted with deliberate indifference[,]" meaning that the defendant "had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence." *Id.*

Deputy Finley argues that "the evidence before the Court establishes that Deputy Finley had probable cause to arrest [Mr. Moore], and the video evidence confirms Deputy Finley never acted with any deliberate indifference toward [Mr. Moore] while arresting [Mr. Moore]." Doc. 65 at 22. Mr. Moore does not address the unlawful imprisonment claim specifically in his response to the motion for summary judgment, though he does contend generally that "[t]he totality of the facts and law, is clear, to all except the total[ly] incompetent, [Mr. Moore] had not committed any crime." Doc. 82 at 26. And he does cite an Eleventh Circuit case saying that "[w]here a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention

pursuant to that arrest." *Id.* at 31 (quoting *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996)). Regardless of whether Mr. Moore waived his arguments on this claim, *see McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir.1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court), the undisputed facts before the court show that Deputy Finley is entitled to summary judgment on this claim.

"Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega*, 85 F.3d at 1526. "This false imprisonment claim under section 1983 is grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Id.* The *Ortega* court recognized a valid false imprisonment claim when an officer violated the plaintiff's "constitutional right to be free from detention where the circumstances and facts under [the officer's] consideration demonstrated that [the officer] clearly lacked probable cause to make an arrest." *Id.* As the court explained above, the facts known to Deputy Finley at the time of arrest provided probable cause. Further, nothing in the record indicates that anyone—let alone Deputy Finley—continued to detain Mr. Moore after it became clear that Mr. Moore was entitled to release. Mr. Moore never alleges that such is the case. Accordingly, the court **GRANTS** Deputy Finley's motion for summary judgment as

to Count Twenty-Four. The court **DENIES** Mr. Moore's motion for summary judgment as to Count Twenty-Four.

### B. Discovery Motions

Mr. Moore filed a host of motions regarding discovery disputes among the parties. Docs. 73, 74, 75, 76, 77, 78, 79, 90, 91, 97, 103. Mr. Moore asks the court to "deem the genuineness" of certain documents, Docs. 76, 77, 78, 79, to impose sanctions on the defendants and their counsel, Doc. 90, to compel responses to various discovery requests, Docs. 73, 74, 75, to "[s]trike Defendants, Finley, Garrett, Moise, and Pettway[']s, designation of Expert witness[es]," Doc. 97 at 3, and to "Strike Defendants Pettway, Finley and Moise Motion for Summary Judgment" because the motions rely on documents subject to the discovery dispute, Doc. 91 at 1. The defendants reply that they "have diligently engaged in communications with [Mr. Moore] to resolve [his] concerns," Doc. 86 at 4, and "have meaningfully participated in the discovery process, at least to the best of their understanding . . . given [Mr. Moore's] reluctance to clarify his requests," *id.* at 9. Based on the evidence provided by the defendants and on the court's review of Mr. Moore's filings, it appears to the court that the substantive disagreements have been resolved to the degree that the law requires. The court has reviewed the defendants' discovery objections that Mr. Moore alleges are boilerplate, and the court is satisfied that the responses comply with the defendants' discovery obligations. Accordingly, the court

**DENIES AS MOOT** Mr. Moore's motion to compel and motions to deem the genuineness of documents, and **DENIES** Mr. Moore's motion for sanctions and motion to strike the defendants' expert designations.

Mr. Moore's motion to strike the defendants' motion for summary judgment is based on the allegation that the defendants' exhibits have not been authenticated due to the discovery disputes and therefore cannot be the basis for their motion. Doc. 91. But "evidence does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, as long as the evidence could ultimately be presented in an admissible form." S*mith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021) (cleaned up). And Mr. Moore has not given this court any reason to believe that the defendants' exhibits could not be authenticated or ultimately presented in an admissible form. Accordingly, the court **DENIES** Mr. Moore's motion to strike the defendants' motion for summary judgment.

Mr. Moore also filed a Motion for Leave to File Subpoenas, Doc. 103. Mr. Moore's proposed subpoenas seek documents that "have been denied to [Mr. Moore] in the normal discovery process in this action." *Id.* at 1. But this is not a proper use of subpoenas. "A majority of district courts have held . . . that a subpoena may be served on another party so long as it is not used to circumvent rule 34 or the other discovery rules." *United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307

F.R.D. 572, 588 (D.N.M. 2015) (collecting cases).

"If a party has served discovery requests on the opposing party [and the party objects], . . . the requesting party should . . . attempt to resolve the . . . dispute through the meet and confer process required by Rule 37(a)(1) . . ., and if that is unsuccessful, . . . file a motion to compel production of the requested . . . information." *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017). "In general, it is not proper to avoid the opposing party's objections by requesting the same documents or information through another discovery device." *Id.* "[I]t is not proper to serve a subpoena duces tecum on the opposing party to produce documents that it has already objected to producing in its response to requests for production." *Id.* "Although most courts hold that a subpoena duces tecum may be served on another party, it cannot be used to circumvent Rule 34 or the other discovery rules." *Id.*

Mr. Moore's proposed subpoenas are an apparent attempt to circumvent the other discovery rules based on his dissatisfaction with the defendants' discovery responses. Accordingly, the motion for leave to file subpoenas is **DENIED**.

### C. Sheriff Pettway's Motion for Judgment on the Pleadings[6]

Sheriff Pettway argues that the claim against him should be dismissed for several reasons. *First*, Sheriff Pettway argues that "the information requested in [Mr. Moore's] Letters for complete and legal names (not a public writing) does not fall under the ORA." Doc. 61 at 4 (cleaned up). And "[e]ven if the Letters requested any public writing, [Mr. Moore's] Letters to Sheriff Pettway exceeded the scope of the ORA because requesting that the information be 'provided' to [Mr. Moore] violates the scope of the ORA." *Id. Second*, according to Sheriff Pettway, "[Mr. Moore's] claim against Sheriff Pettway is now moot because the full and complete legal names of deputies Finley, Moise, Garrett and Gast have been provided to [Mr. Moore] during this litigation." *Id.* at 7. *Finally*, Sheriff Pettway argues that "he is protected by absolute immunity under the Alabama Constitution and the Code of Alabama." *Id.* at 9.

The claims against Sheriff Pettway must be dismissed for two reasons.

*First*, the court declines to create a monetary remedy for a violation of the Open Records Act in the absence of legislative direction. *See* Doc. 1 at 20–21 (requesting compensatory and punitive damages against District Attorney Carr and

---

[6] The court previously held that "Sheriff Pettway is entitled to qualified immunity on Mr. Moore's federal claims against him." Doc. 32 at 42. Accordingly, the court will address only the claim against Sheriff Pettway under the Alabama Open Records Act.

Sheriff Pettway). Both the Open Records Act and the Open Meetings Act promote transparent government operations, but the legislature included a provision for fines in only the Open Meetings Act. *See Swindle v. Remington*, 291 So. 3d 439, 463 (Ala. 2019) ("[T]he expressed purpose of the Open Meetings Act, specifically the policy of this state that the deliberative process of governmental bodies shall be open to the public during meetings . . . ." (cleaned up)); *Graham v. Alabama State Emps. Ass'n*, 991 So. 2d 710, 717 (Ala. Civ. App. 2007) ("The purpose of the Open Records Act is to allow private citizens to monitor the manner in which public officers discharge their public duties."); Ala. Code § 36-25A-9(g).

In the Open Meetings Act, the Alabama Legislature provided for "a civil penalty payable to the plaintiff(s)" in the event of a violation. Ala. Code § 36-25A-9(g). "The maximum penalty for each meeting shall not exceed one thousand dollars ($1,000) or one half of the defendant's monthly salary for service on the governmental body, whichever is less. The minimum penalty shall be one dollar ($1)." *Id.* The Open Records Act has no such provision, *see* Ala. Code § 36-12-40, and Mr. Moore has not noted any Alabama precedent establishing a monetary remedy or civil fine available for Open Records Act violations. Accordingly, the court declines to create a monetary remedy for a violation of the Open Records Act in the absence of legislative direction.

*Second*, even if there were a civil fine or monetary remedy available under the

40

Open Records Act, Mr. Moore lacks standing to bring such a claim. "The [Alabama Supreme] Court has adopted the *Lujan* test as the means of determining standing in Alabama." *Ex parte Alabama Educ. Television Comm'n*, 151 So. 3d 283, 287 (Ala. 2013), *as modified on denial of reh'g* (Jan. 24, 2014). Under the *Lujan* test, "[a] party establishes standing . . . when it demonstrates the existence of (1) an actual, concrete and particularized injury in fact . . . ; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." *Ex parte King*, 50 So. 3d 1056, 1059 (Ala. 2010) (cleaned up). (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Under United States Supreme Court and Alabama Supreme Court precedent, Mr. Moore cannot establish standing to pursue his claim for monetary damages under the Alabama Open Records Act. The United States Supreme Court has held that "citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 187 (2000). The Court "specifically noted in that case that there was no allegation in the complaint of any continuing or imminent violation, and that no basis for such an allegation appeared to exist." *Id.* Based on this rule, the Supreme Court of Alabama has held that a citizen suitor does not have standing when seeking civil fines under the Alabama Open Meetings Act to redress "injury . . . caused by an alleged one-time violation of the Open Meetings Act that was wholly past when

41

[the] action was filed." *Ex parte Alabama Educ. Television Comm'n*, 151 So. 3d at 288. When a citizen suitor, allegedly wronged by a statute such as the Alabama Open Meetings Act "seeks not remediation of their injury but vindication of the rule of law," they "do not satisfy the redressability prong of the *Lujan* test." *Id.* at 288–89 (cleaned up). A citizen suitor seeks such remediation when they "have not alleged any continuing or imminent violation, nor does any basis for such an allegation appear to exist." *Id.* at 288 (cleaned up).

Mr. Moore's suit for damages of a "wholly past" violation of the Alabama Open Records Act falls within this holding. Mr. Moore alleges that Sheriff Pettway refused to respond to his letters asking for the complete legal names of the Deputy Defendants involved in this litigation. Those names have now been provided to Mr. Moore as part of this litigation. Mr. Moore does not allege any "continuing or imminent violation, nor does any basis for such an allegation appear to exist." *See id.* Rather, Mr. Moore seeks monetary damages to vindicate the rule of law that public records must be made available under the Alabama Open Records Act. *See* Doc. 1 at 20–21 (requesting punitive damages). "Fines sought for such purposes do not satisfy the redressability prong of the *Lujan* test." *Ex parte Alabama Educ. Television Comm'n*, 151 So. 3d at 289. And to the extent Mr. Moore seeks injunctive relief requiring Sheriff Pettway to provide the names of the individuals, his claim is moot because the information Mr. Moore sought in his requests has been provided

42

to Mr. Moore during this litigation. Accordingly, the court **GRANTS** Sheriff Pettway's Motion for Judgment on the Pleadings, Doc. 61. The court need not address Sheriff Pettway's other arguments. The court **DENIES** Mr. Moore's motion for summary judgment as to his claims against Sheriff Pettway.

### D. District Attorney Danny Carr's Motion for Judgment on the Pleadings

District Attorney Danny Carr's moves for judgment on the pleadings for the same reasons as Sheriff Pettway. Doc. 69. However, at the motion to dismiss stage, Sheriff Pettway had successfully asserted a defense of qualified immunity to Mr. Moore's federal claims. Doc. 32 at 42. District Attorney Carr had not done so. Accordingly, District Attorney Carr asserts the defense of qualified immunity as to Mr. Moore's federal claims. Doc. 69 at 3.

District Attorney Carr is correct that Mr. Moore cannot establish that Sheriff Pettway's alleged failure to disclose the Deputy Defendants' names violated Mr. Moore's constitutional rights. The Supreme Court has held that there is no constitutional right to access public information. *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978). "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.* Therefore, District Attorney Carr is entitled to qualified immunity on Mr. Moore's federal claims against him.

Further, District Attorney Carr is entitled to judgment on the pleadings for the

same reasons the court grants Sheriff Pettway's motion for judgment on the pleadings. Accordingly, the court **GRANTS** District Attorney Carr's motion for judgment on the pleadings, Doc. 69. The court **DENIES** Mr. Moore's motion for summary judgment as to his claims against District Attorney Carr.

## IV.    CONCLUSION

For the reasons explained above, the Deputy Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Mr. Moore's motion for summary judgment as to Count One is **GRANTED**. Sheriff Pettway and District Attorney Carr's motions for judgment on the pleadings are **GRANTED**. The remaining motions are **DENIED**.

Mr. Moore's motion for summary judgment asks the court only to "grant Summary Judgment to the plaintiff on the issue of liability." Doc. 82 at 39. The court has granted Mr. Moore summary judgment on the issue of liability as to Count One. But in Count One of Mr. Moore's complaint, he seeks monetary damages. Doc. 1 at 6. Because Mr. Moore requested summary judgment as to only liability, his damages claim remains. The court **DIRECTS** the parties to confer as to the issue of Mr. Moore's damages under Count One and to propose a schedule for adjudicating the issue.

The Clerk of Court is **DIRECTED** to mail a copy of this order to Mr. Moore.

**DONE** and **ORDERED** this 5th day of March, 2026.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE